*708 ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Felicia Nicole Graham, a currently suspended attorney.[1]
UNDERLYING FACTS
Respondent represented several personal injury clients whom she referred to Metropolitan Health Group and Canal Radiology Laboratory (collectively, the “medical providers”)[2] for evaluation and treatment. The charges for the medical services were to have been paid from the proceeds of settlements obtained by respondent in the personal injury cases. On October 18, 2000, respondent wrote nine checks on her client trust account in payment of the medical expenses incurred by five of her clients to the medical providers. These checks totaled $3,739.25. However, the checks were subsequently returned unpaid by the drawee bank, marked “account closed.”[3]
| {.Upon receiving the unpaid checks, the medical providers contacted respondent in an attempt to resolve the matter. Respondent informed a representative of the medical providers that she would take care of the situation “in a couple of days,” but after three weeks with no response, the medical providers filed a complaint against respondent with the ODC.
On February 20, 2001, the ODC forwarded a copy of the complaint to respondent by certified mail, but she failed to reply to the complaint. The ODC thereaf *709 ter served respondent with a subpoena compelling her to appear on April 20, 2001 and answer the complaint under oath. Respondent failed to appear.
DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed one count of formal charges against respondent, alleging that her conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) and 1.15(b) (safekeeping property of clients or third persons), and 8.1(c) and 8.4(g) (failure to cooperate with the ODC in its investigation).
Respondent failed to answer or otherwise reply to the formal charges.[4] Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions.
|3In its submission, the ODC argued that respondent’s conduct was negligent and caused injury to her clients and a third party. The ODC also argued that a suspension is the baseline sanction for respondent’s misconduct, pursuant to Standard 4.12 of the ABA’s Standards for Imposing Lawyer Sanctions.[5] The ODC suggested several aggravating factors are present in this case, including respondent’s prior disciplinary offenses, pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1995). The ODC identified no mitigating factors. Concluding there is no reason to deviate downward from the baseline sanction, the ODC recommended respondent be suspended from the practice of law.
Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

After reviewing the record, the hearing committee concluded that respondent committed the substantive misconduct charged in the formal charges. While recognizing that there is no specific evidence in the record to conclusively show that respondent converted her clients’ funds to her personal use or commingled those funds with her own, the committee found “the very fact that there was insufficient money to pay these charges available in the trust account requires a finding that the money was put to another purpose.” The committee also found respondent failed to pay third parties and failed to cooperate with the ODC in its investigation.
The committee found no mitigating factors exist in this case. In aggravation, the committee considered respondent’s failure to cooperate with the ODC in a | ¿disciplinary proceeding. The committee refused to find that prior discipline or substantial experience in the practice of law are aggravating factors in this case, on *710 the ground there is no evidence in the record to support such a finding. Moreover, the committee refused to recognize a pattern of misconduct as an aggravating factor. The committee noted there is little guidance in the jurisprudence on the issue of whether a series of nine checks written on the same day to the same payees, albeit on behalf of different clients, constitutes a “pattern” of misconduct as intended by the ABA Standards. Therefore, the committee looked to a recent decision of the Delaware Supreme Court which held that a pattern of lawyer misconduct involves “identifiably similar instances of repeated misconduct over a period of time” or “multiple acts of intentional or knowing misconduct.” See In re: Reardon, 759 A.2d 568 (Del.2000). Applying this definition to the instant case, the committee determined no pattern of misconduct is present:
While the conduct at issue here falls under the heading of “multiple acts” of misconduct as discussed in Reardon, the Respondent’s conduct here is characterized by the ODC in its “submission on sanctions” as “negligent,” not “intentional or knowing,” as required in Reardon. The fact that there seems to have been enough money in the account when the checks were written also requires a finding of negligent rather than intentional misconduct. Therefore, since the misconduct did not occur over a period of time and did not involve multiple acts of “intentional or knowing” misconduct, the Committee will not find a “pattern of misconduct” as an aggravating factor.
Turning to the issue of an appropriate sanction, the committee first considered the applicable ABA Standards. The committee noted that under Standard 4.12, suspension is the appropriate baseline sanction for the lawyer’s violation of her duties to her clients and to third parties; by contrast, under Standard 4.13, reprimand is generally appropriate when the lawyer is negligent in dealing with client property and causes injury to the client. Noting the ODC’s assessment of respondent’s mishandling |Rof trust account funds as merely negligent conduct, the committee found respondent’s conduct caused actual harm to her clients and to the medical providers and rose to the level of an intentional disregard of her duties when she did not reimburse the medical providers for the returned checks after she had promised to do so. Accordingly, the committee found Standard 4.12 is the more appropriate standard to be applied in this case, and that suspension is the appropriate baseline sanction under Standard 4.12 and the applicable jurisprudence dealing with similar misconduct.[6]
Considering all of these factors, in particular “the significant amounts involved ($3,739.25), the fact that five clients were harmed because their bills remained unpaid even though their attorney received money to pay the bills, the intentional and/or deliberate disregard by the attor *711 ney of the harm which has been caused to both her clients and to third-party providers, and the complete failure of Respondent to cooperate with the ODC’s investigation,” the committee recommended that respondent be suspended from the practice of law for three years. The committee further recommended that the suspension commence to run from the date respondent provides documentation that she has paid restitution to Metropolitan Health Group and Canal Radiology Laboratory.
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

IsDisciplinary Board Recommendation

The disciplinary board generally agreed with the hearing committee’s factual findings and its application of the Rules of Professional Conduct. After reviewing the record in its entirety, the board determined that respondent failed to remit funds to the medical providers and converted those funds, but found there is no evidence she commingled her own money with money belonging to a client or third person. The board also found that respondent failed to cooperate with the ODC in its investigation. Accordingly, the board determined respondent violated Rules 1.15(a) and (b) and 8.1(c) and 8.4(g) of the Rules of Professional Conduct.
The board found that respondent knowingly violated duties owed to her clients and to a third party when she knowingly mishandled her trust account funds. Furthermore, when the medical providers notified respondent of the dishonored checks, she promised to remedy the situation but then failed to do so. The board suggested this conduct is at least knowing because the returned checks and the subsequent promise made by respondent to remedy the situation indicate that she had knowledge of her failure to pay. This conduct caused injury to five clients and two medical providers. In aggravation, the board recognized respondent’s prior discipline in Graham I, pattern of misconduct,[7] and failure to cooperate in the disciplinary process. The board found the record does not support any mitigating factors.
Turning to the issue of an appropriate sanction, the board agreed that the baseline for respondent’s misconduct is a suspension from the practice of law. Considering the cases cited by the hearing committee, and due to the serious injury |7to clients and the medical providers, and the presence of prior misconduct and pattern of misconduct, the board agreed a three-year suspension is appropriate.
Accordingly, the board recommended that respondent be suspended from the practice of law for three years. The board further recommended that respondent be ordered to make full restitution to Metropolitan Health Group and Canal Radiology Laboratory. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the recommendation of the disciplinary board.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this *712 court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we conclude the findings of the hearing committee, as modified by the disciplinary board, are supported by the record. The undisputed evidence reveals respondent failed to remit funds to the medical providers, converted those funds, and failed to cooperate with the ODC in its investigation.
| ^Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is clearly serious in nature, with the most egregious violation relating to her conversion of funds owed to the medical providers. In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we set forth guidelines for imposing discipline in a conversion case:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The ^attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
A suspension from practice of eighteen months or two years will typically result *713 where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.
Hinrichs, 486 So.2d at 122-123 (citations omitted).
The deemed admitted facts in this case establish that respondent failed to pay the third-party medical providers and retained for her own use the funds she had received for that purpose. It appears from the record that these funds have not yet been repaid. Given such facts — particularly considering respondent’s failure to pay restitution — this case falls on the higher end of the Hinrichs range. Considering the aggravating factors present, and the absence of mitigating factors, the three-year suspension recommended by the disciplinary board is appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Felicia Nicole Graham be suspended from the practice of law in Louisiana for a period of three years. Respondent is ordered to make full restitution to Metropolitan Health Group and Canal Radiology Laboratory. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal |ininterest to commence thirty days from the date of finality of this court’s judgment until paid.

. See In re: Graham, 01-2930 (La.2/8/02), 807 So.2d 829 ("Graham I”).

. It appears that Metropolitan Health Group and Canal Radiology Laboratory are jointly operated.

. The ODC obtained copies of respondent’s bank records in the course of its investigation. The records reveal that on October 18, 2000, the day the nine checks at issue were written, the balance of respondent’s client trust account was $11,202.05. The balance then dropped below zero on several occasions in November and December 2000; the account was finally closed on January 2, 2001. The records do not indicate when the medical providers presented the nine checks for payment, but it was apparently sometime after that date.

. The formal charges were sent by certified mail to respondent's primary and secondary registration statement addresses, both of which are in New Orleans. Those letters were returned unclaimed. The formal charges were also sent by certified mail to respondent’s last known business address at the Third Circuit Court of Appeal in Lake Charles. That letter was signed for by an employee of the Third Circuit’s clerk's office. Pursuant to Supreme Court Rule XIX, §§ 8(C) and 13(A), respondent received adequate notice of the formal charges.

. Under Standard 4.12, suspension is appropriate when a lawyer knows or should know that she is dealing improperly with client property and causes injury or potential injury to a client.

. The committee relied upon In re: Henderson, 99-3593 (La.5/26/00), 761 So.2d 523, and In re: Cannizzaro, 00-0413 (La.3/17/00), 758 So.2d 780. In Henderson, the respondent was charged with failing to maintain settlement funds in a trust account, failing to remit payment to a third-party provider, failing to cooperate with the ODC, and commingling and conversion of client funds. The disciplinary board recommended a three-year suspension, but this court imposed a two-year suspension because of the absence of prior discipline and the payment of restitution. In Cannizzaro, the respondent failed to promptly pay $660 to a third-party provider and failed to safeguard the funds he had received for that purpose. This court accepted a petition for consent discipline and, based upon compelling mitigating factors, imposed a ten-month suspension. By contrast, in the instant case, respondent has paid no restitution to the medical providers, no mitigating factors are present, and the sum of money involved is fairly large.

. Although the committee refused to find a pattern of misconduct based on the issuance of nine checks dated the same day, the board suggested this reluctance was premised upon the committee's lack of knowledge of Graham I. The board found a pattern of misconduct exists in this case because Graham I involved, among other violations, respondent's conversion of client funds and failure to pay a third „ party.